Dear Ms. Hackwood:
This is in response to the request of your predecessor, Al F. Holmes, Jr., for a formal opinion from this office as follows:
 May the Board of Trustees of the Missouri State Employees' Retirement System provide the participants in the Medical Care Plan an alternate form of coverage in Health Maintenance Organizations?
In the opinion request, it was indicated that three Health Maintenance Organizations (hereinafter referred to as "HMOs") have sought approval of the Board of Trustees to offer members of the Retirement System participation in their plans. It was further indicated that federally qualified HMOs are of the opinion that they could, under 42 U.S.C. § 300e-9, force the Retirement System to offer qualified HMOs to its members as an alternative health benefit plan.
Federal legislation designed to stimulate the development and expansion of prepaid comprehensive health care delivery systems through federal assistance to qualified HMOs was signed into law December 29, 1973. P.L. 93-222,87 Stat. 914 (42 U.S.C. § 300e). In brief summary of its pertinent parts, we note that the federal legislation (1) claims to supercede any state health care law which creates an impediment to the creation and/or operation of an HMO (42 U.S.C. § 300e-10); (2) provides that only those organizations which have "fiscally sound operations" and "adequate provision against the risk of insolvency which is satisfactory to the Secretary [of Health, Education and Welfare, now Health and Human Services]" and which meet other specified criteria are eligible to be federally "qualified" (42 U.S.C. § 300e(b),300e(c), and 300e-9(d)); and (3) provides that certain employers, including state and local governments which receive federal payment under certain, named, Title 42 programs, (of which the State of Missouri is a recipient)must offer employees the option of participation in a qualified HMO in the HMO's service area (42 U.S.C. § 300e-9(a)(1)).
Unlike some states, Missouri does not presently have specific legislation relating to Health Maintenance Organizations. Instead, HMOs, as providers of prepaid hospital care, medical-surgical care and other health care and services, are presently authorized to do business and regulated by the Division of Insurance of the State of Missouri under Chapter 354 of the Missouri Revised Statutes. In this connection, the term "health services corporation" is defined in §354.010(4), RSMo 1978, as follows:
 "Health services corporation", any not for profit corporation heretofore or hereafter organized or operating for the purposes of establishing and operating a nonprofit plan or plans under which prepaid hospital care, medical-surgical care and other health care and services, or reimbursement therefor, may be furnished to a member or beneficiary;
Section 354.015, RSMo 1978, provides in part that while health services corporations are subject to the provisions of Chapter 354, they are not subject to any other law of this state relating to insurance or insurance companies except as otherwise specifically designated in Chapter 354. Thus upon a determination by the director of the Division of Insurance that all the requirements of Chapter 354 for commencement of business have been met, the director must issue to the health services corporation a certificate of authority to do business in Missouri (§ 354.060, RSMo 1978). We note that a health services corporation must have a paid-in capital or guaranty fund of not less than $150,000 prior to the director issuing a certificate of authority to do business in Missouri (§ 354.075, RSMo 1978). Once it begins conducting business, the health services corporation must maintain reserves adequate to provide hospital, medical-surgical and other health services for its members and beneficiaries and meet all its costs and expenses (§ 354.080, RSMo 1978).
The authority of the Board of Trustees of the Missouri State Employees' Retirement System to provide a health benefits plan to members of the Retirement System is found in Chapter 104 of the Missouri Revised Statutes. Section104.515.1, RSMo Supp. 1980, requires the Retirement System Board to:
 provide or contract for insurance benefits to cover hospital, surgical and medical expenses for employees under section 104.310 to 104.550, . . .
Presently, the Retirement System provides, but does not contract for, the benefits required under § 104.515.1; the system is self-insured.
We believe that the Retirement System is authorized to offer health benefits through a health services corporation should the system wish to contract for health benefits under § 104.515.3 which provides:
 To the extent any benefits provided under this program are insured, the selection of any insurance company or service organization
shall be on the basis of competitive bidding. (Emphasis added)
As HMOs are health service corporations organized under Missouri law, the Retirement System may contract with HMOs for the provision of benefits to system members and beneficiaries.
We add the following caveat. While it is our opinion that the Retirement System may contract with an HMO for the provision of benefits under § 104.515, 42 U.S.C. § 300e-9
(a)(1) requires the system to offer employees the option of membership in a qualified health maintenance organization which provides health services in areas in which at least twenty-five (25) employees reside. The term "qualified health maintenance organization" is defined in subsection (d) of § 300e-9 of the Act as follows:
 For purposes of this section, the term "qualified health maintenance organization" means (1) a health maintenance organization which has provided assurance satisfactory to the Secretary that it provides basic and supplemental health services to its members in the manner prescribed by section 1301(b) [42 U.S.C. § 300e(b)] of this title and that it is organized and operated in the manner prescribed by section 1301(c) [42 U.S.C. § 300e(c)] of this title, and (2) an entity which proposes to become a health maintenance organization and which the Secretary determines will when it becomes operational provide basic and supplemental health services to its members in the manner prescribed by section 1301(b) [42 U.S.C. § 300e(b)] of this title and will be organized and operated in the manner prescribed by section 1301(c) [42 U.S.C. § 300e(c)] of this title.
Thus, an HMO must meet the standards of the Department of Health and Human Services and be designated as a qualified HMO in order to receive the benefit of the mandatory choice requirements of the federal legislation.
Because Chapter 354, which pertains to health services corporations, requires only $150,000 in initial capital, it is our view that unless sound management and fiscal policies are required of an HMO, the long-term ability of an HMO to provide health care services to Retirement System members might be seriously impaired. We believe that because of the requirements for federal qualification, and in particular the oversight of a qualified HMO's fiscal operations and the adequacy of its provisions against the risk of insolvency by the Secretary of Health and Human Services, which federal qualification mandates, the possibility of the financial demise of a qualified HMO and the inevitable loss of benefits to its participants is significantly less than where an HMO is not subject to such review.
CONCLUSION
It is, therefore, the opinion of this office that the Board of Trustees of the Missouri State Employees' Retirement System has authority under the provisions of § 104.515, RSMo Supp. 1980, to include in any health benefits plan offered to its members the option of membership in a health maintenance organization organized under Chapter 354, RSMo 1978. It is further our opinion that the Missouri State Employees' Retirement System must offer its members the option of membership in a qualified health maintenance organization, where twenty-five (25) or more system members reside in that HMO's service area.
The foregoing opinion, which I hereby approve, was prepared by my Assistant, B. J. Jones, and the Deputy Attorney General, Edward D. Robertson, Jr.
Very truly yours,
 JOHN ASHCROFT Attorney General